Okay. Thank you very much, Mr. Taylor. The case is submitted. We'll turn now to the next argued case on the calendar, number 20-4243. Donnelly. Thank you. Mr. Dornan, whenever you're ready. Excuse me, counsel. It's going to help if you could speak just a little more slowly because the mask is sort of difficult for us. Yes, I'm sorry about that. Apologies, Your Honour. We've just had an appearance of some technical loss on the magistrate's appeal order for the Brown Law Society. The appellant, Mr. Blackwell, exhibits that this could be a knack point with regard to the statutory interpretation of section 1421C, whereby he is entitled to judicial review of the denial of his application for naturalisation after a hearing before an appeal he undertook before a policing officer and that his argument was that he fell into error. Could you explain why the exhaustion requirement in that section doesn't apply here in respect of the hearing that he did not attend? Yes, Your Honour. What's your best argument for why we shouldn't apply that? Well, the best argument, Your Honour, is that the hearing did not be a physical hearing. It's a hearing submissive on the denial, most of all... So hearing is not to be taken literally. There's nothing to be heard. It's just submission on the papers. That's sufficient? And, Your Honour, indeed, I say that... But in this case, that's not what the agency offered, right? They offered a full hearing and they wanted him to appear in person because there could have been additional questioning. He could have submitted additional documents. That's part of the administrative procedures of this case, right? And he didn't participate in those procedures. Yes, Your Honour, but then the agency again went on to make an accusation. And they achieved the decision regardless of the amount of parents' time. So are you arguing that maybe somehow the government waived this argument or forfeited it by not... by allowing the decision to be made by the district court here without the hearing or they didn't, you know, I don't know. Somehow the district court... the fact that the district court ruled on this matter makes the government's... somehow affects the government's argument. Well, yes, precisely, Your Honour. As I turn the panel over to you, it's 8 CFR 336.2. It's helpful that the decision has the statutory laws and obligations. But 8 CFR 336.2b sets out that the USCIS will schedule a review hearing within a reasonable period of time. Not to exceed 180 days, which is close to 10 in this case. Moreover, the reviewing officer will have the authority and discretion to review the application, financialization, and exoneration of the application and may refer the findings and determination of the original government officer or re-determine the original decision in full or in part. And at the end of that session, it says the reviewing officer may, in his or her discretion, conduct a full, available hearing or may utilize the last four months. Yeah, but the agency didn't decide to do something less extensive. The agency said he didn't show up. We wish he had shown up because we could have gotten additional documents or asked additional questions. But given that he didn't show up, we're going to do it based on the record. So the agency just entered a decision that was based on less of a proceeding than it wanted to conduct, right? So he did prevent the agency from doing its full hearing procedure. Respectfully, no, there aren't any. I mean, if the agency had just said, well, he didn't show up, and so therefore we're going to, by default, find against him, and it didn't inspect the record at all, would you still say he got a hearing because there was a final decision from the agency? Yeah, so that's a different process, and it was open to the agency to do so. It was open to the agency to say, you didn't show up, so we will give you a decision in default. And in fact, we treat your application perhaps as withdrawn. We didn't do that. We proceeded to make a determination on the record and expressly said so. Yes, he has to review your final decision. So is your argument that there was exhaustion because, in fact, there was a final decision, or your argument is the entry of the final decision excuses Mr. Donnelly's lack of exhaustion? The former, Your Honor, that there was exhaustion because it was a final decision. More importantly, right at the end of the decision, the agency said, so this decision constitutes a final and administrative denial of your naturalization of the case. You may request to raise a review of this final determination by filing a face-up review. Yes, Mr. Corkadel, the jurisdiction will be in place. Can I ask you a different question? So you make an argument that 1421 is not a jurisdictional limitation, right? I do. So in this case, escalar, we say that the failure to exhaust under 1421 negates our jurisdiction. So why doesn't that settle the question as to whether it's jurisdictional? Because escalar didn't really deal with an application under 1421, saying the procedural facts of escalar or that the executive order had been naturalized and you didn't have to go through the reopened application process. So there was no application, as was the case in this case. There was no application of that particular statute. So the escalar court basically found that you didn't engage in a final analysis with respect to proceedings which were still open for you. In this case, we have a final decision, it's implicit. That's a different argument. I guess I'm asking whether the failure to exhaust administrative remedies in this context is jurisdictional or not jurisdictional. And so that's different from whether, in fact, there was exhaustion or not. So if we said in this prior case that it negates our jurisdiction, why isn't that a decision that it's jurisdictional? Because it doesn't deal with the statute of issues within the frame, the application for today's review on the statute of issues. But more importantly, as the respondent's authority can see, that our sister circuit decisions would say that it's not. It's not jurisdictional, right. So I'm asking, well, maybe, but why shouldn't we think that our circuit has decided in a different way because we described it as jurisdiction? Well, the circuit follows the jurisprudence, again, from the Supreme Court that the statute shouldn't be treated as jurisdictional unless there is express language to that report. And so what do we do with the earlier case where we said jurisdiction? That was just loose language and we shouldn't think that it's a holding based on an actual jurisdictional limitation? Yes, yes. Can I ask another question, which is this question about whether development subsequent to the filing of a complaint can cure a jurisdictional defect? Yes. Your view is that it can, right. But usually when we say that, isn't it that amended pleadings or supplemental pleadings clarify what the state of the world was at the time of the initial filing? It's not that you can do something new after the initial filing. You can amend a complaint to clarify that there was jurisdiction at the time of filing. But wouldn't it be pretty dramatic to say that you could file when we don't have jurisdiction to hear the case and then you can do something else to fix? Didn't you say there is jurisdiction and we should ignore the state of the world at the time of filing? Yes, Your Honor. Normally, the amendment does go back to the statute or the time of the original case. But in this case, there were two factors. One was that when the appellant brought the original defection here, so he would not be granted a very, very important clause. He was deprived of… But if it were a jurisdictional limitation, the district court could have sua sponte dismissed it right away, right. And it's just kind of happenstance if you get to file an amended complaint and say, Oh, no, now I have exhausted administrative remedies, so now jurisdiction has appeared. Well, Your Honor, I certainly did have an arguable case at the start when I brought my original defection, although certainly I had a tougher burden to establish under the escalatory principles, the zone principles, that because this was a clinical assessing law, that I was kind of a keen weaver of the hearing. But that became academic, I say, after I was issued with the decision. Now, there's only two options in that case. Either I amend now the case, or I start a new one. But in the interest of today's Parliament, which was back in this most recent week, amend now the case, as you can see, now to challenge the final decision. I think we have that argument. You're over time, but you've reserved time for rebuttal. So we'll hear back from you again. Let's turn to Ms. Rosenbaum for the appellee. Well, I guess, I mean, I think you think that the jurisdictional decision is settled by Escalier. But Escalier does seem to be talking about a mandatory claim processing rule. And usually we don't think, you know, exhaustion of administrative remedies statutes are jurisdictional. What's special about this one? So I think that Escalier uses the term jurisdictional. Our position is, of course, it is jurisdictional. The hearing requirements as well as Section 1421 administrative exhaustion requirements generally are jurisdictional. But even if we were to consider a claim processing rule, it is mandatory and it must be enforced. The government raised the issue below. And it is a statutory administrative exhaustion requirement like this one. It makes no exceptions. So whether this court were to determine it was jurisdictional, our position that under the plain language as well as Escalier, it is, or a mandatory claim processing rule, the fact remains that Mr. Donnelly did not attend this hearing. And as a result, the lower court did not hear the case. And what are we to make of the issue of manifest injustice? Does that have any relevance or impact here? So assuming that the court finds that it meets the jurisdictional requirement, under this court's recommendation from 2007, there are no exceptions to jurisdictional requirements. So there would be no equitable exceptions, including for manifest injustice. I will make a couple of comments regarding Judge Atkin's findings below as to manifest injustice. And I think the government would take issue with a couple of those findings, but underlie his conclusion that there is manifest injustice first. Judge Atkin remarks that the government has not confronted Mr. Donnelly with the PS&I documents as the government is required to do. The applicable provision here is ACFR 336.1, which governs naturalization applications, and provides that USCIS must describe in detail the factual basis of its decision. It is not USCIS's standard practice to attach documents to its decision. That said, if Mr. Donnelly has appeared at this hearing, I don't know that a new immigration officer is looking at this case and knew what he's done. He may have been given a stop. Let me ask you this. Didn't Donnelly ask for this hearing to be postponed? Mr. Donnelly did ask for a new hearing. And he didn't get a response, right? He didn't get a response saying, no, the hearing is going forward. Just my question. Might he be able to make some kind of a case that he was actually prevented from going to the hearing or misled in some way? He asked for an adjournment. He was waiting for that response. And he didn't get it. Because he didn't get it, he didn't go to the hearing. Would he be able to make that argument? Mr. Donnelly requested an adjournment, not for, say, a scheduling conflict. He requested an adjournment, an indefinite adjournment, until the resolution of the Southern District Action and said that it would be entirely unlawful or inappropriate for the hearing to proceed. It was clear to USCIS that he was not going to attend this hearing. It is true that USCIS did not issue a decision on the adjournment request until Mr. Donnelly had failed to show, which it was clear he was going to do. He didn't show. And then USCIS didn't attend three cases of decision, denied the adjournment request, and made a decision based on the records reported without the benefit of information that could have come out of that hearing. But I don't think Mr. Donnelly could make the argument that the adjournment request had any impact here based on what he was saying in that adjournment request. Right, but isn't the idea, though, that had there actually been a response saying, no, we're not going to give you an adjournment, perhaps he would have appeared at the hearing. I mean, it wasn't as if this was some extremely lengthy period of time between the adjournment request and when the decision came. It's not as if, oh, well, it's been months, he should know he's not going to, you know. He requested the adjournment, and I guess maybe about a month later, decision denied, and by the way, adjournment's denied. Again, his request for an adjournment, an indefinite adjournment, was based on his belief that USCIS could not go forward with the hearing. Right, I understand that. You're saying it's improper. I mean, I guess USCIS sent him a notice that said, here's a date. If you can't make it on this date, let us know, and we will reschedule it and accommodate you for that reason. And he sent a letter saying, this whole thing is illegitimate, and you should adjourn the proceeding until the district court decides. And you're saying there just is no basis for that, and so therefore the agency wasn't obliged to respond. USCIS, I think, did what it ordinarily does in these circumstances. Applicants do not show up occasionally for their hearings. Like, if somebody had sent a letter that said, I don't recognize the authority of USCIS to do this adjudication, and I think you shouldn't do it, what would the agency's response to that have been? I would believe that the agency in that instance would take the record before it, as it did the hearing, and, again, adopt the criteria. Is there reason for thinking that USCIS would need to respond to that kind of demand? If it was in the form of an adjournment request, it would need to respond. They did respond to it earlier in the N-366 decision itself. But if it was an adjournment request, it would need to respond to it. So then they responded in the hearing itself. So could Mr. Donnelly have reacted to that by saying, oh, now that you've denied my adjournment request, I want to appear at the hearing? Could he have gotten a hearing after that response? I am not sure what would have happened in that case, but what I will say is a lot of the agency to whom Donnelly has raised a fear. He's complaining before this Court. He's complaining about the research documents for surveillance of the M-1. He's complaining about the PSNI documents. He raised some of these issues in his N-336 application. But, again, had he attended the hearing, it would have been an opportunity for the agency to consider these claims before they go before the federal courts. And the entire purpose of an administrative adoption requirement is to allow the agency a first pass on the claims before they go before the federal courts. So if the reason that he didn't show up at the hearing is because he objected to it, you're saying that's not a good reason for not exhausting. But if he had an argument that he was unable to attend, then it would be a different case. If he had asked for an adjournment due to a schedule conflict today, I believe, though I can't speak to the obvious that's happened here, I believe the USCIS would have rescheduled it here. He made very clear recently he's not going. But what if, to take your example, let's say it was because of a scheduling request. He has a doctor's appointment. Something's going on. He says, I'd like this to be adjourned because I have this conflict. If there were no response to that and then he still missed the hearing, he's still out of luck, according to your position? Because this is a jurisdictional issue. Because 1421C requires a denial, but it also requires an after-adjournment for immigration. An after-adjournment is going to appear and be heard. And so USCIS's decision is not enough. Mr. Bellamy says that his best argument is that there's a denial here. That is not enough, I'm just explaining in terms of the statute. Yes, there must be a denial, but there also must be a hearing. And so USCIS's decision did not ignore it. Well, there was a hearing. You're just saying it wasn't the full hearing that the agency would otherwise do. There was not a hearing here. There was not a hearing before an immigration officer. USCIS is aware this is not going to show up. The hearing did not go forward. The N336 decision notes that there was no hearing, and so USCIS is proceeding. You said a moment ago that— That USCIS—that would even be entirely unlawful for USCIS to proceed with this hearing because the Southern District is now under jurisdiction. And so USCIS issued a decision saying that the adjournment request was denied, and additionally, because Mr. Donnelly failed to attend the hearing, they were deciding this matter with just the record as it had been. Was the hearing canceled after he made that statement that he wasn't going to attend because it was unlawful? Or did they—was there a hearing? Did the administrative law judge or whoever it was sit in a room waiting for him to show up? Can I see my time and pick up? Go ahead. Thank you. So I do not know exactly what happened at the administrative—at USCIS when Mr. Donnelly made it clear he was not going to attend. I simply know there was no hearing at the police. I don't believe an immigration officer appeared for that hearing because of Mr. Donnelly's detention and statement that this proceeding could not go forward. Sometimes the agency decides not to have in-person hearings. Maybe not in this specific context, but we still call those things hearings, right, if it's done on the papers. That's correct. But here, again, the language of 1421c, which is jurisdictional under this court's precedent, makes clear a hearing required a hearing— So you say that it's jurisdictional under this court's precedent, but a moment ago you said it doesn't really matter if we see it as jurisdictional or we see it as a mandatory claim processing rule. So if we decide that it's not jurisdictional but it's mandatory, would there be an exception for manifest injustice? So the Supreme Court has reserved judgment on the question of whether there are equitable exceptions, such as for manifest injustice, for mandatory claim processing rules. This court has remarked on a couple of occasions that there may be equitable exceptions in the context of the claim processing rules. So the cases in which this court has done, many of those remarks are different from the case here. So, for instance, we have a case case from 2006, which involved a jurisdictional administrative adoption requirement in the ERISA case. There's Weitzner from 2015, which involved a filing deadline under the federal rules. Sometimes we've said that in the context where there's a sort of judicially created exhaustion requirement, but here Congress has said you need to have the hearing in advance, right? It hasn't created an exception to it. And statutory administrative adoption requirements like this one, it needed no exception. And so whether this court would have determined it's a jurisdictional nature, which is the federal disposition it is, or mandatory claim processing, it is a mandatory rule that must be enforced. And because Mr. Donnelly did not attend his hearing here, the district court did not hear this claim. Okay, thank you very much, Ms. Rosenbaum. We'll hear back from Mr. Dornan on rebuttal. Yes, thank you, Your Honor. I was going to suggest the last point first, that you can't seek to complete mandatory claim processing rules with the same restrictions as jurisdictional rules, but that's the entire point of the jurisprudence, the development of the jurisprudence. Yes, of course, claim processing rules are mandatory, but they do permit for exceptions. Well, when the courts kind of create exhaustion requirements, then we can determine the boundaries of them usually, but if Congress has told us you can't file this claim unless you exhaust your administrative remedies and they haven't provided such an exception, where do we get the authority to say there's an exception to the rule? Well, again, following the line of jurisprudence, that from re-Delta we were onwards, that it's only precluded if the jurisdictional line is built into the statute itself. Right, that's the question about whether it's jurisdictional. But now I'm asking you, even if we decide that it's not jurisdictional, Congress has said it's categorical. Congress didn't say you can file after a hearing unless the exhaustion requirement would create a manifest injustice. They just say you can't file this claim unless you've had a hearing before an immigration officer and thereby exhausted your remedies. So why would we be able to create an exception to that rule? Well, respectfully, Your Honor, because that's then treating the mandatory claim processing rule as jurisdictional. It's not jurisdictional, so there has to be some exception. There's always... But you're saying that unless we create exceptions, we're treating it as jurisdictional? If it's treated, if the claim processing rule is treated as mandatory on the hearing, it must be exhausted. I mean, there are other aspects to jurisdiction, right? Like jurisdiction, you have to decide up front. You can't decide other questions first. It's also a set of limitations. So, like, treating something as jurisdictional has a lot of implications beyond whether there are exceptions to it. Yes. In this case, what the appellant is relying on is the court's authority, both under judicial review authority, to address wrongdoing by the agency, to demarcate it in terms of statute, and also the constitutional issues. The court can always review constitutional issues. But the wrongdoing here, and I respect that you can say so, was clear. Right now, the appellant had the right to afford the tribal court a consolidation from Judge Hallerstein. The agency had to act within a certain timeframe with regard to its reopened hearing and say, Okay. Just by modification of one of the timeframes. But then reverted to valid and federal laws. And valid and federal laws under which it was a legislative decision within 180 days. And that was far from the courts. That was entirely consistent with its previous values of federal laws. Moreover, the appellant came to the value of international treaty laws by sourcing the documents, which the agency refused them to provide. So my comment then, I'll take it from your comment, Samuel. Why don't you just make this one last point, and then you're over time. Yes, hang on. My comment is to suggest that ultimately, perhaps that the agency's not provided the documentation. The appellant had demanded the documentation ahead of his interview, because those are the two thirds of Judicial Review. And we are reporting the appellant to interrogate the documents. But he didn't participate in the proceeding, right? So the government can say, look, if you had shown up at your hearing, you would have gotten the documents. Maybe we would have even adjourned for you to review them in time. You would have been able to raise that before the agency. The whole point of an exhaustion requirement is to allow the government a chance to remedy a mistake. So even if that were a problem with the proceeding, the fact that you didn't exhaust means that the government didn't have that chance. And usually we don't entertain Judicial Review when a party doesn't participate fully in the administrative remedies. Yes, but the fact that this appellant didn't engage, he didn't enter the process independently, it was wrong to say that he refused to come to the hearing. His letter to EOCS was requested adjournment, and I don't believe it was caused. Well, he wanted an indefinite adjournment. He didn't say, I can't make it that day, and I'm going to come a different day. He said, I do not think that you have the authority to have this proceeded. Right? No, not right now. He said that the SDNY either has excluded or component jurisdiction. That's what he sought to bring to the SDNY court, and therefore he requested an adjournment generally. But the agency determined for itself that the SDNY court didn't have jurisdiction. Well, even if it had concurrent jurisdiction, then that means the agency would be able to have the hearing nevertheless, right? So then why wouldn't he show up? If he recognized that they could at least have the authority or might have the authority to have the proceeding, why didn't he show up at the hearing? But you just said that he said that they either have exclusive or concurrent. If they had concurrent, then it means that the agency could proceed. So it seems like even under the terms of his letter, he recognized that they could proceed with the hearing. Are you saying only the SDNY could decide that question? Yes, Your Honor. I'm not referring to the respondent. I'm sorry, the agency. So you're saying it might be that the agency had concurrent jurisdiction, but they're not allowed to exercise it until the district court tells them that they can. Yes, because the agency was a respondent. And the agency just ignored that. They might have mentioned that the agency wanted jurisdiction. Okay. Well, thank you, Mr. Dornan. No case reported. The case is submitted.